# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BOOMJ.COM, a Nevada corporation, and
LINLITHGOW a Nevada limited liability
company,

        Plaintiffs/Counterdefendants,

v.

GEORGE PURSGLOVE, an individual;
DOES 1 through 50, inclusive, and ROE
CORPORATIONS I through X, inclusive,

        Defendant/Counterclaimant.

Case No. 2:08-CV-00496-KJD-RJJ

**ORDER**

Presently before the Court is Defendant/Counterclaimant's Motion in Limine (#106) to exclude the Mark Guest letter from evidence and to preclude the Plaintiff's expert, Jeffery S. Herrell, from testifying at trial as to the ultimate factual issues based on the Mark Guest letter. Plaintiffs/Counterdefendants filed a response in opposition (#110) to which Defendant replied (#113).

I. Facts

Plaintiff Boomj.com is a Nevada corporation that developed a website aimed at appealing to Baby Boomers and Generation Jones. Defendant George Pursglove began working at Boomj on or about October 1, 2006. On or about November 14, 2006, Pursglove was named CEO of Boomj. In

his capacity as CEO, Pursglove was issued 3.4 million shares of Boomj stock. On or about October 25, 2007, Pursglove resigned his position with Boomj. The parties dispute whether Pursglove's shares were subject to a vesting term.

On February 15, 2008, Boomj filed the present Complaint asserting claims for Breach of Confidentiality/Non-Compete Agreement, Breach of Post-Confidentiality Non-Compete Restrictive Covenant, Breach of Fiduciary Duties, Fraud Misrepresentation, Conversion, Trespass to Chattel, Intentional Interference with Contractual Relations, and Injunctive Relief.

On May 6, 2008, Pursgolve filed an Answer denying all allegations. Simultaneously, Pursglove also filed a Counterclaim for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealings, Breach of Fiduciary Duties, Fraud and Misrepresentation, Claim to Recover Wages Pursuant to NRS 608.030, Unjust Enrichment, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage, Abuse of Process, Conversion, Declaratory Relief Pursuant to NRS 30.040 and Injunctive Relief.

Plaintiffs, to establish their contention that Pursglove's Boomj stock was subject to vesting, have hired Jeffery S. Herrell ("Herrell"), an expert on the legal needs of early stage and start up companies. Herrell was asked to provide a report regarding the dispute between Plaintiffs and Defendant, specifically his perspective on whether Pursglove's shares were subject to vesting.

To familiarize Herrell with Boomj so he could write his report, Plaintiffs provided Herrell with a total of fifty-eight (58) documents including a letter which Plaintiffs assert was written by Mark Guest ("Guest"). Guest had considered becoming a founder of Boomj early in the company's creation, but ultimately chose not to pursue the prospect. Guest was never issued any Boomj stock, but according to the letter he was informed about Boomj stock at the same time and in the same manner as Pursglove. The letter details Guest's understanding of Boomj stock ownership. The letter also states that Guest and Pursglove knew Boomj stock would be subject to a vesting period. The letter was filed with the Court on October 27, 2009. It was not in the form of an Affidavit or Declaration nor is Guest's signature notarized.

1    Herrell's statement discusses the contents of the Mark Guest letter as well as some of the

2  other fifty-eight (58) documents he reviewed.  The report reaches the conclusion that the Plaintiff's

3  actions were "not inconsistent with those of a company that intends to follow what is, in [Herrell's]

4  opinion, the ordinary course of business and attach vesting provisions of capital stock that it is

5  issuing to its founders."

6  II.  Motion to Exclude the Mark Guest Letter

7    Defendant has moved to exclude the Mark Guest letter from evidence. Defendant argues that

8  the letter is unauthenticated hearsay under Fed.R.Evid. 801. In response, Plaintiffs agree that the

9  Mark Guest letter is "clearly hearsay" and further state that they "have no intention of introducing the

10  Mark Guest letter at the time of trial."  Therefore, the exclusion of the Mark Guest letter is not in

11  dispute. When the "resolution of the issue presented cannot really affect the [party's] rights, there is,

12  generally speaking, no case or controversy for the courts to adjudicate; no real relief can be

13  awarded." Smith v. University of Washington, Law School, 233 F.3d 1188, 1193 (9th Cir. 2000).

14    Here, because the parties agree the letter is hearsay and that it will be excluded from trial, the

15  Court's decision on whether to exclude the letter as hearsay from the trial will not affect the

16  Defendant's rights. Defendant can reintroduce this objection at trial if the Plaintiff attempts to

17  introduce the Mark Guest letter at that time.  Accordingly, the Court denies as moot Defendant's

18  motion in limine on the Mark Guest letter.

19  III.  Motion to Preclude Plaintiff's Expert Witness Jefferey S. Herrell from Testifying as to Ultimate

20  Factual Issues Based on the Mark Guest Letter

21    Defendant has moved to preclude Plaintiff's expert witness, Jeffery S. Herrell, from testifying

22  at trial as to the ultimate factual issues based on the Mark Guest letter. It is not disputed that Herrell

23  is a qualified expert and Herrell has provided a report pursuant to Fed.R.Civ.P 26(a)(2)(B).

24    The report is Herrell's application of his own perspective, experience, and knowledge of early

25  stage and start up companies to the information he was provided by Boomj.  Herrell lists fifty-eight

26  (58) documents he reviewed to form his report, one of which is the Mark Guest letter. According to

1   the report, the Mark Guest letter claims that the Defendant "agreed that no shares would be vested

2   prior to the completion of at least one year of service" to Plaintiff Boomj. In the same paragraph

3   Herrell opines that "it is typical for a company to impose vesting terms on the members of its

4   founding team and as such, a vesting agreement with Pursglove would not be unusual."

5          Defendant claims that such a basis for an expert opinion should preclude Herrell from

6   testifying at trial as to the ultimate factual issues based on the Mark Guest letter. Defendant's

7   definition of the "ultimate factual issues based on the Mark Guest letter" includes any testimony by

8   Herrell regarding the existence of a vesting schedule - because Herrell relied in part on the Mark

9   Guest letter in forming his expert report. Defendant argues that Herrell should be precluded from

10  relying on the Mark Guest letter to support the existence of a vesting schedule because the letter is

11  unreliable in addition to being inadmissible hearsay.

12         Defendant claims the letter is unreliable because it is an "unauthenticated hearsay letter that

13  was written three years after the incident in question, two months before the discovery deadline, and

14  almost two years after the complaint was filed, from an individual who has never become a part of

15  the company and is known to have a substance abuse problem." It is not disputed that the letter is

16  inadmissible hearsay.  Defendant believes that because Herrell relied in part on the letter, he should

17  be precluded entirely from testifying regarding the existence of a vesting schedule. The Court

18  disagrees.

19         Fed.R.Evid. 703 outlines the type of information an expert witness may rely upon in forming

20  an opinion or inference:

21         The facts or data in the particular case upon which an expert bases an opinion or inference may
           be those perceived by or made known to the expert at or before the hearing. If of a type
22         reasonably relied upon by experts in the particular field in forming opinions or inferences upon
           the subject, the facts or data need not be admissible in evidence in order for the opinion or
23         inference to be admitted.

24         Therefore, Herrell may correctly rely upon the Mark Guest letter if it is the type of

25  information experts in the field of newly formed and start up companies reasonably rely upon in

26  forming opinions or inferences.  The Court finds that it is.  It is a logical assumption that an expert

4

1  who is evaluating the business practices of a company would communicate with individuals who are

2  familiar with or have a relevant connection to that company.  The fact that the letter was written three

3  years after the incident in question, two months before the discovery deadline, and almost two years

4  after the complaint was filed, is not fatal.  Guest's understanding, as evidenced by the letter, would

5  potentially be probative on the issue of whether the company was offering unvested stock to

6  prospective employees. Plaintiffs have indicated that the letter was written for the convenience of

7  Herrell, and therefore it is expected that the letter was written after Herrell was brought on as an

8  expert witness and not soon after the events it describes.  Defendant has not substantiated his claim

9  that Guest "is known to have a substance abuse problem" and therefore any assertion that the letter

10  was unreliable and Herrell should not have reviewed the letter on those grounds is unfounded.

11        Additionally, experts are permitted to rely on information that is otherwise inadmissable and

12  thus it is inconsequential that the letter is inadmissible hearsay.

13        Rule 703 further provides:

14        Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the
          proponent of the opinion or inference unless the court determines that their probative value in
15        assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial
          effect.
16

17         Plaintiffs, therefore, are prohibited from disclosing to the jury the existence of the letter,

18  which both sides agree is inadmissable hearsay, unless the Court determines the letter has more

19  probative value than prejudicial effect. The Court will address the probative value of the letter at trial

20  if that issue comes before it.  Regardless, Herrell was permitted to review the letter even though it is

21  hearsay.

22        Additionally, although Herrell's report states he reviewed the letter, a close reading of the

23  report demonstrates Herrell barely relied upon the letter, if at all.  The Mark Guest letter is referenced

24  one time in the entire report in the first paragraph of the section labeled "Analysis."  Herrell notes

25  that the Mark Guest letter states that the Defendant "agreed that no shares would be vested prior to

26  the completion of at least one year of service" to Plaintiff Boomj. Herrell does not state whether he

5

1   believes that statement to be true nor does he claim to use that information to determine whether

2   there was in fact a vesting term or schedule. Rather, he states "[a]s stated above," referencing his own

3   knowledge and experience, "it is typical for a company to impose vesting terms on the members of its

4   founding team and as such, a vesting agreement with Pursglove would not be unusual." Defendant

5   agrees that Herrell has the knowledge and expertise to determine what is "usual" for a start up

6   company. Herrell's reliance upon his own knowledge and his review of fifty-eight (58) documents

7   relevant to the formation of Boomj demonstrates that his report and testimony rest on a reliable

8   foundation.

9   Herrell's report gives expert insight into the typical and plausible practices of a start up

10   company which intends to have a vesting term for its capital stock and uses appropriate support to

11   reach the conclusion that it is plausible Plaintiffs had such a vesting term. Notably, the report also

12   mentions how few of the typical start up company practices Plaintiffs actually followed. This

13   information, pursuant to Fed.R.Civ.P 702, will assist the trier of fact to understand the evidence to

14   determine a fact or issue. Accordingly, the Court denies Defendant's motion in limine on this issue.

15   IV.  Conclusion

16   Accordingly, IT IS HEREBY ORDERED that Defendant's Motion in Limine (#106) is

17   **DENIED**.

18

19   DATED this 3rd day of June 2011.

20

21

22   Kent J. Dawson
     United States District Judge

23

24

25

26

6